UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LOWELL HOUSING AUTHORITY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 08-10784-JLT |
| | * | |
| PSC INTERNATIONAL, INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

December 2, 2010

TAURO, J.

I.  Introduction

This action arises out of an alleged written agreement ("Agreement") between Defendant PSC International, Inc. ("PSC") and Plaintiff Lowell Housing Authority ("LHA"). Pursuant to the Agreement, PSC was to provide consulting services aimed at reducing the cost of utilities to LHA. After a two-day bench trial, LHA moved for a directed verdict.[1] LHA seeks a declaratory judgment holding the Agreement invalid and unenforceable. For the following reasons, Plaintiff's Motion for Directed Verdict [#56] is ALLOWED.

II.  Findings of Fact

Plaintiff LHA is a Massachusetts Public Housing Authority formed under Massachusetts General Laws chapter 121B. Its principal office is located in Lowell, Massachusetts. Gary

---

[1] A motion for a directed verdict in a bench trial is treated as a motion for judgment on partial findings under Federal Rule of Civil Procedure 52(c). See Ne. Drilling, Inc. v. Inner Space Servs., Inc., 243 F.3d 25, 37 (1st Cir. 2001).

1

Wallace is the Executive Director of LHA and he is its authorized contract officer. Judy Beilin is the procurement officer for LHA.

William Duggan began working for LHA in 1971 and reports to Wallace. He is the Deputy Director of Facilities Management for LHA. Duggan's job responsibilities, in addition to general maintenance of LHA's properties, include researching and recommending improvements for housing developments, planning and implementing major capital improvements, maintaining developments, and assisting in the selection and supervision of outside consultants. Duggan was informed at some point during his career with LHA that he was not allowed to execute contracts.

Defendant PSC is a Connecticut corporation with its principal place of business in New Britain, Connecticut. PSC supplies consulting services to various organizations aimed at lowering their utility costs. As part of its consulting services, PSC reviews an organization's costs and determines whether the organization can save money by changing vendors or by modifying its existing contracts. Bryan Yagoobian is an independent contractor acting as a referral agent for PSC, meaning he receives a fee when he refers business to PSC. William Weitzke is the President of PSC and James Coleman is the Chief Executive Officer and Chairperson of PSC.

In August of 2006, Yagoobian contacted Wallace to discuss the utility cost savings that PSC could provide to LHA. Wallace directed Yagoobian to speak with Beilin, who thereafter scheduled a meeting. Duggan, Beilin, and Yagoobian met in Duggan's office to discuss PSC's services. Yagoobian outlined the scope of PSC's services and Duggan signed the Agreement, but did not read it. Sometime thereafter, Duggan also signed three Letters of Agency ("Consent Letters") and a Data Request Form, enabling PSC to obtain information from LHA's vendors.

In signing the Agreement, the Consent Letters, and the Data Request Form, Duggan

believed that he was merely giving PSC permission to obtain records from LHA's vendors regarding pricing.  Yagoobian knew that Duggan was not the Executive Director and that Wallace was Duggan's supervisor.  Duggan never told Yagoobian that he had the authority to sign the Agreement.

The Agreement provided that PSC would be LHA's exclusive representative in obtaining utility savings.  The Agreement committed PSC to making recommendations to LHA on ways to save utilities costs.  PSC would receive a fee only if it was successful in obtaining savings for LHA, in which case PSC would receive fifty percent of any credits received or savings obtained.  The Agreement would have saved LHA $239,233.60 over a period of three years, with PSC's fee being $119,616.80.  The Agreement was never put to any public bidding, nor was any public notice published.

Pursuant to the Agreement, PSC performed an analysis and completed a written recommendation for a supplier of electric utility services.  Within a month after the August 2006 meeting in which Duggan signed the Agreement, Duggan met with Weitzke and Coleman to further discuss the relationship between LHA and PSC.  Weitzke told Duggan that PSC could save LHA money on its electric utility services.  According to PSC's analysis, LHA could save money by switching to Direct Energy.

At some point thereafter, Duggan informed PSC that LHA would not go forward with the company's plan because PSC's fee was too high. In November of 2006, Weitzke called Duggan and threatened to sue LHA.  In February of 2007, Wallace began receiving phone calls from PSC representatives who referenced Duggan.  Wallace, being unaware of the Agreement, conferred with Duggan, who told him about PSC, the meetings with Yagoobian and Weitzke, and that PSC

claimed that Duggan had signed a binding contract and was seeking payment on it. Wallace immediately contacted Weitzke and set up a meeting.

In mid-February of 2007, Wallace met with Weitzke. At this meeting, Wallace told Weitzke that Duggan did not have the authority to sign the Agreement and that it violated LHA's procurement policy. Wallace did not hear from PSC representatives again until PSC commenced suit.

III. Conclusions of Law

Massachusetts courts have held that housing authorities have the contracting powers of private corporations.[2] As such, housing authorities may be held liable by contract in the same way that private corporations may be held liable.[3] Those seeking to enforce contracts entered into by an agent of a housing authority may present evidence that establishes the agent's actual or apparent authority.[4] It is therefore incumbent on Defendant PSC to prove that Duggan had the authority to enter into the Agreement or that Plaintiff LHA, having full knowledge of its provisions, ratified the Agreement.

---

[2] Costonis v. Medford Hous. Auth., 343 Mass. 108, 113 (1961).

[3] Id.; see also Ryan v. Boston Hous. Auth., 322 Mass. 299, 300 (1948).

[4] See Simonelli v. Boston Hous. Auth., 334 Mass. 438 (1956) (holding that plaintiff seeking to enforce a promise of permanent employment had the burden to show that agents had authority to bind housing authority); cf. Lucey v. Hero Int'l. Corp., 361 Mass. 569, 572 (1972) (holding that plaintiff had burden of showing that president of corporation had authority to enter into an option agreement on behalf of the corporation or that the corporation ratified it with full knowledge of its provisions); James F. Monaghan Inc. v. M. Lowenstein & Sons Inc., 290 Mass. 331, 333 (1935) (holding plaintiff had burden to show corporation had power to enter into contract and that it was made or ratified by agents with authority to bind corporation); Cashin v. Corp. Fin. Co., 251 Mass. 60, 62 (1925) (holding that plaintiff had to prove at least a majority of corporation's directors "knew of the transaction and its terms and with such knowledge acquiesced in it and adopted it").

Actual authority, either express or implied, concerns "the agent's power to affect the principal's relations with third parties as manifested to the agent by the principal."[5] Express authority, a type of actual authority, is that which the principal communicates "fully and explicitly" to the agent.[6] The principal must expressly communicate to the agent the acts she wants the agent to perform and the extent of the agent's authority to perform those acts.[7] PSC conceded at trial that Duggan had no express authority by which to bind LHA. Accordingly, this court will not address the issue further.

Implied authority, a second type of actual authority, "evolves by implication from the conduct of the parties."[8] This breed of authority arises if an agent reasonably believes that she has the authority to do the act.[9] An agent may be deemed to have implied authority in several ways. An agent typically has implied authority to do that which usually accompanies, is incidental to, or reasonably necessary to complete the transaction for which the agent has actual authority.[10] Implied authority may also arise if the principal has repeatedly acquiesced in and adopted similar acts by the agent.[11]

This court concludes that Duggan did not have implied authority to enter into the

---

[5] Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 744 (2000).

[6] Chevalier v. Economou, 1998 Mass. App. Div. 72, 73 (1998).

[7] Id.

[8] Theos & Sons, 431 Mass. at 743 n.13.

[9] Colony of Wellfleet, Inc. v. Harris, 14 LCR 223, 225 n.7 (Mass. Land Ct. 2006) (citing Restatement (Second) of Agency at § 8 cmt. a, 27 cmt. a), aff'd, 71 Mass. App. Ct. 522 (2008).

[10] MacDonald v. Gough, 326 Mass. 93, 97 (1950).

[11] Stoneman v. Fox Film Corp., 295 Mass. 419, 426 (1936).

Agreement at issue. Importantly, Duggan testified that he did not have the authority to enter into any contracts on behalf of LHA. There is no evidence that Wallace accorded Duggan the responsibility of entering into similar contracts. Rather, Duggan was told that he did not have the authority to enter into contracts. Although Duggan's job description enabled him to participate in selecting consultants, there is no evidence that he knew that such a duty existed, nor is there any evidence that he had selected consultants in the past. In fact, Wallace testified that Duggan had not executed similar binding contracts for LHA prior to the Agreement presently at issue.

Furthermore, Duggan did not believe that he was entering into the Agreement as such. Rather, he believed that he was merely giving PSC permission to obtain pricing information from LHA's vendors. This court thus cannot conclude that Duggan believed that he had the authority to sign the Agreement, nor that Wallace "repeatedly acquiesced in" or adopted acts by Duggan similar to that of signing the Agreement. Accordingly, Duggan did not have implied authority to enter into the Agreement.

Apparent authority is established by the word or conduct of the principal, not the agent. Apparent authority "results from conduct by the principal which causes a third person reasonably to believe that a particular person . . . has authority to enter into negotiations or to make representations as his agent."[12] Such authority can be created through written or spoken words or any other conduct by the principal that "causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."[13] Apparent

---

[12] Hudson v. Mass. Prop. Ins. Underwriting Ass'n, 386 Mass. 450, 457 (1982) (quoting W.A. Seavey, Agency § 8D, at 13 (1964)).

[13] Theos & Sons, 431 Mass. at 745 (quoting Restatement (Second) of Agency, § 27 (1958)).

6

authority is only established when the third person learns facts from which he reasonably infers the authority.[14]

Because the existence of apparent authority hinges on the conduct of the principal, the question here is whether Wallace caused PSC to reasonably believe that Duggan had the authority to enter into the Agreement. PSC fails to demonstrate that this is so. Wallace had contact with PSC only two times. The first instance was when Yagoobian called Wallace, who referred Yagoobian to Beilin. This referral alone does not support the conclusion that Wallace caused any PSC agents to believe that Duggan had the authority to enter into the Agreement. Wallace did not involve Duggan in any of the discussions. Rather, it was Beilin who invited Duggan to the meeting. Wallace's second contact with PSC occurred when he set up a meeting with Weitzke, in which he told Weitzke that Duggan lacked authority to contract on behalf of LHA. In essence, Wallace's only contact with PSC was a brief phone call in which he referred Yagoobian to Beilin and the meeting in which he repudiated the Agreement. Wallace's conduct could not have led PSC's agents to reasonably believe that Duggan had the authority to enter into the Agreement. Duggan therefore did not have apparent authority to enter into the Agreement.

Even if an agent does not have the requisite authority to perform an act, the principal will be bound if she later ratifies the act. Ratification may occur if "the principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts."[15] Importantly, a principal must generally have full knowledge of all material facts before

---

[14] Peters v. Haymarket Leasing, Inc., 64 Mass. App. Ct. 767, 773 (2005).

[15] Linkage Corp. v. Trs. of Boston Univ., 425 Mass. 1, 18 (1997).

7

ratification may be found to exist.[16] A principal may not, however, remain willfully blind to information within her possession and control.[17]

In this instance, this court cannot conclude that LHA, through Wallace, ratified the Agreement. Wallace, upon receiving telephone calls from PSC agents, immediately discussed the matter with Duggan. Promptly thereafter, Wallace set up a meeting with Weitzke, wherein Wallace informed Weitzke that Duggan did not have contracting authority. Although Wallace was generally aware that PSC existed, having referred Yagoobian to Beilin in August, Wallace did not have sufficient knowledge of all the material facts to support a conclusion that he acquiesced in Duggan's action. Additionally, because Wallace repudiated the Agreement soon after learning of it, he did not fail to promptly disavow Duggan's conduct after learning of it.

IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Directed Verdict [#56] is ALLOWED. AN ORDER HAS ISSUED.

                                            /s/ Joseph L. Tauro
                                            United States District Judge

---

[16] Inn Foods, Inc. v. Equitable Co-op. Bank, 45 F.3d 594, 597 (1st Cir. 1995) (citing Puritan Medical Ctr. v. Cashman, 413 Mass. 167 (1992); Perkins v. Rich, 11 Mass. App. Ct. 317 (1981)).

[17] Id. (quoting Torpey v. Interstate Equip. Leasing Corp., 760 F.2d 364, 365 (1st Cir. 1985); citing Puritan, 413 Mass. 167).